Good morning, Paul Burks, Assistant Attorney General on behalf of Defendants Lexi Giannullis and Daniel Hynes. Well, welcome to the First District. I know you've both practiced here for a long, long time. We look forward to the arguments. We have the briefs. I can assure you we've read the briefs and the pertinent portions of the record, so it would behoove you, we'd appreciate it, if you get your strongest points first. It's 15 minutes to sign, but you have plenty of time. We don't look at our watches, and we do allow rebuttals after that. Any time you're ready, Mr. Novoselsky. Thank you very much. Counsel, may it please the Court, again, David Novoselsky. Let me get to an issue which, although it's not the culinary issue that obviously is of interest, it is something that I think is extremely vital to not simply this case, but the court system. And that's the issue of whether or not the trial court dared in not granting the request for a permanent injunction. The issue here was at least the second time the state legislature had engaged in what they referred to as a suite of funds. In this particular instance, mandatory arbitration funds, which are, and I think we all agree, funded by litigants' fees that are paid in as part of the civil filing, as well as the lawyer's assistance funds, which are paid by individual attorneys as part of their registration. And, Mr. Novoselsky, when they were swept in the past, did anybody brought suit against the state to prevent them from doing that? Well, I apologize. Not on the judicial fund issue. There was a lawsuit initially filed some years ago on the first time these sweeps took place. The Supreme Court at that point said it was a one-time issue. There were no court funds swept. Okay. So the court never dealt with the issue under Crocker whether or not judicial funds could be taken and made into general revenue. When there was an initial sweep, if we look at, and this is, I believe, in the record, the comment was, well, it was a one-time deal. The court, nobody filed suit. The court chose not to do anything by requesting, there was nothing done. Right. I bring it up because while it's clear they're going to continue to have sweeps, they'll have a sweep every time there's a nickel somewhere. They will, sir. They will absolutely have more sweeps. The question is, why would we believe it's imminent that they would sweep something where now there's a court order? A court has decided they can't sweep these two funds. Well, it is a circuit court order which may or may not be of binding effect outside of Cook County. The state may take the position I can't speak for them. They have. Is this an issue? Beg your pardon? They have not yet, so. Well, it is capable, and, you know, we've cited the Donrells case and the others. Is it moot because this particular one was stopped? You know, it's interesting, if you look at the transcript, Judge Barkwood said this is an issue that should go up. I'm a trial court. Right. And the governor and the state treasurer may decide, or the legislature, we're not really, this may bind us in Cook County, but we're not in Cook County, we're a state agency, or we're a state official, and we're going to do it. Absent precedent from a reviewing court or, frankly, from the Supreme Court, and this is why when it was declared unconstitutional, it's a little troubling. Normally where a statute is declared unconstitutional, either as applied or overall, there's an appeal by the attorney general if the statute is stricken down, or the state's attorney if it's a local ordinance declared unconstitutional. The only reason not to do it here is to provide the ability, and let's be practical, we can do it all over again, and sooner or later, the other issue is, and, of course, if we prevent people from getting paid, you're not going to have too many people coming up to challenge this. Nobody challenged it the first time. Now, which arbitration fund was this? This is the Supreme Court Mandatory Arbitration Fund, which is paid for. It's a separate item every time a lawsuit is filed. Okay. You'll see a receipt. That's not the appellate courts. It was the circuit court. No. This is the use in the circuit court. Yeah. I don't believe there is an arbitration. I think on the filings in this court, there is no charge for arbitration. These are fees that are charged pursuant to statute when a lawsuit is filed to a civil litigant. I don't believe they're filed in the criminal system. You mentioned you do cite in Ray Donrel S., and in that, one of the things Donrel S. looked at was, again, those were, for those who don't know, those were people who had been involuntarily committed, and they were serially involuntarily committed to severe mental problems. One of the things that this court said in saying that it was not moot was, this is, meaning there's often a 90-day gap. They'd be locked up every 90 days. This is too little time to permit an appeal to be fully litigated before the order is expired. What would the rush be? So let's assume they do what you are concerned with, and I believe you are concerned, Mr. Novoselsky, that three months from now, they decide they're going to sweep these identical funds, and they do so. And somebody comes up and files suit on it. What would the rush be? Why would we? I don't know if it's a rush. Duplicative, I grant you. I think as a practical matter, it's not an issue of rush. The other case is, and one of the issues is, is it capable of repetition? We know here that it took place once. There was, frankly, a promise made by, I think it was Governor Blagojevich, who, of course, is no longer with us. We wouldn't do this again. And they do it again. In the absence of authority, one of the functions of the court system, very respectfully, is to provide precedent. It's nothing else. If you look at the Jorgensen case, if you remember, that was the COLA, cost of living case. Supreme Court in Jorgensen said, look it, this court has to protect itself. Otherwise, we become an inferior branch of our tripaid branch of government. If this court system is not going to protect itself, and candidly, you need protection from having fees which are not supposed to be used as general revenue under Crocker and under Danaher and many other cases. The legislature's position is, we don't have to follow the law because the executive branch chooses not to challenge it on behalf of the court. So the court, since we now have a ruling, and it is capable of repetition, which is a recognized exception to the mootness doctrine, is necessary. That's one of the two elements, I suggest. It is. And the first element, though, being, first, the order of appeals must be of a duration too short for the court to be fully litigated prior to its cessation. And that's from Henry Donrel. So it's a two-thing. To avoid mootness under public policy exception, you'd have to say it has to be too short of a time. We have plenty of time. They took the money. They're probably writing chits now, but they'll get the money back, I'd suggest. How do you have the first element? Then I'll go back to Jorgensen. Jorgensen said the court has the inherent power to protect itself. It's part of the function. I'd invite the court to look at the Jorgensen. It did. I don't want to jump the gun, but they do have the power to protect themselves. And so how is it that you became our knight in shining armor, Mr. Novoselsky? Because the court has, and I'll again point to you, because the Attorney General of the State of Illinois chooses not to protect the court. And I'll be candid, Judge, if that's the Attorney General. If the Attorney General is successful, you may not find another knight in shining armor. This was a hard-fought case. This nonsense about, oh, we reluctantly said give it back is nonsense. We were fought every step of the way. We were told we couldn't even be in the court system. But how did you get here would be my question on it, Mr. Novoselsky, you as opposed to any other person. This is a 37-year member of the bar, I believed, with my obligation to assist the court in an act which, in the Jorgensen language, relegated this court to a nonentity with no power to enforce the laws. The laws were being ignored as to the judicial branch. And perhaps I shouldn't have done it. And perhaps the Attorney General is correct if people can't come in and do it. The court, this court cannot initiate litigation on its own. You're the arbitrator. You can't become a player. The Supreme Court has never initiated a lawsuit to protect itself. It must rely upon either a special Attorney General appointed, which they refuse to do here, or a member of the bar who steps up. In years in the past, some of the bar organizations did it, but they had no more standing or lack of standing than I did or Mr. Curcio did. So we bellied up to the bar. We put a lot of our own money into the case for the purpose, you know, I look at their briefs and they keep saying these aren't court funds, the court is an implicated in this nonsense. Whose money was taken? The court's money. Who got the money back? The court. And the Attorney General looks you in the eye and says, the court isn't implicated. The court funds weren't implicated. The court had no interest in this matter. The court was a stranger. Mary Morowitz is a lawyer. Her $7 fee didn't motivate her to run in and sue to get it sent back to LAP. With the insulting comment on the record is, well, I guess Ms. Morowitz is an alcoholic because this helps alcoholic lawyers. That's the attitude the Attorney General took in this case for the court system and towards LAP. It's called, it's our money. The court, since we choose not to step up and represent the court, even today when the issue of substantial interest is there, the Attorney General's position is the court is not entitled to a lawyer because they choose not to represent the court and no one else may stand here for the court. Well, I suggest to the court they're pretty big boys. Who's big boys? Those seven justices up there in the Supreme Court, if they wish to have counsel step up or a judge file or somebody else file, I think they're quite capable of doing that. And how do they do that, Your Honor, if I can ask? I don't know how they do that. Would they then have to recuse themselves, the entire court system recuse itself? Well, they just ruled on the length of judge or length of stay. They had no problem ruling on that. They had no problem ruling on judicial pay raises three years ago to protect their perspective. And how was that done, though? It wasn't done by the court. It should have been done by the Attorney General. It was done by a judge. No, it was done, yes. And who paid for it? The judges, not the state, who should have. That was a law that was not followed. The Attorney General chose not to represent the court. Excuse me, counsel, but the point that Justice Quinn is making is that the court did protect itself with Jorgensen, with Maddox. In Jorgensen and Maddox, individual judges filed suit. Here, it was funds taken from the system, not from individual judges. And in Jorgensen, I was the attorney in the Maddox case. That was not the state ignoring a statute. That was a challenge to a statute. In Jorgensen, the governor refused to follow the law. What should have happened, rather than having individual judges each tap for $1,000 and the state deciding to pay for part of the settlement? A special attorney general should have been appointed at that point to represent the judicial system, paid for just like the defense of the other two branches was paid for by state funds. This court has become the stepchild of the system, by virtue of the fact that the Attorney General believes they have a not to challenge what may be an improper statute. When this case came up, we asked the Attorney General, and it's in the record, that perhaps somebody should be appointed to represent the interests of the court. Just like they stand here today, their position is, you're not entitled to one because the court's interests aren't implicated. And if that's true, and I'll tell you, I think the court in Jorgensen could have, although nobody asked for it, instead of tapping the thousands of judges in Illinois to pay for the defense of the fact that the governor refused to follow the law. If the governor refuses to do something, the legislature gets a special attorney general, and it's paid for. Every other branch has had representation by the Attorney General. Read their briefs here. Did you approach anybody, though, to become a special attorney general? We were told the Attorney General wasn't going to do it. I can't approach the court. That's an ex parte communication. Okay. So then tell us in a few minutes how you propose that we pay you. If you look at the decision in Environmental Protection Agency, page 328, it says the court can appoint a special attorney general. You're told that only the Attorney General can. I'm suggesting this court can treat us as a special attorney general. And when should we do that? Beg your pardon? When should we do that? Do it right now. If the work is done? We've asked for it. Right now, yes. Well, I don't read your brief asking that we should appoint you. Maybe I'm misreading your brief. They said two things right in EPA, one of which is you're correct. The appellate court could have appointed outside counsel in that case. They also said you should only appoint outside counsel when the Attorney General is personally involved in it, I mean personally involved. So they are allowed to represent two agencies that are going hammer and tong at one another. They were not to appoint people when that happens. That's what they do. They have no conflict in that. They represent both sides. Well, that's interesting because I think if you look at the Vidolia case, it says that the rules of professional conduct apply. The Attorney General there represents the other two branches. Their position is these funds should have stayed there. They could represent all the branches. They could represent every agency. That's what they do. I respectfully disagree under Vidolia and under the rules of professional conduct. They have to appoint a special attorney general. They can't have, for instance, Mr. Burke, in theory then, could stand here and argue on and off his brief just like we used to do in moot court. He could stand here and say, you know what? Those fees and interest should be paid back to the court system. Excuse me, now I'm going to put on my hat as the legislature and say, no, it isn't. That's an absurd result. I'm sorry, it's absurd. The holding was that aldermen who make money off workers' comp cases should not represent city employees in workers' comp cases. It says what the holding is, though, is that the rules of professional conduct apply to public attorneys. That's the exact language of the Supreme Court. Besides he being as famous as Blagojevich, he was acting, though, in his capacity to make money. Certainly there's no suggesting the AG's office is trying to make money on this case, right? So they're not acting in their own capacity to somehow get ahead. Frankly, I think the argument made by the Attorney General that they're the only one who can represent state agencies, including the court, when the court is really the party in interest here, the argument is, well, it's not really the party in interest is absurd. I'm sorry, that's the way I characterize it. These were court funds, and if this court chooses to do nothing, maybe next time no one will step up to the plate and the court will become exactly what was said in Jorgensen, a third and inferior branch of this government. Because it is? I don't think so, sir. I disagree. I apologize. Well, I don't think we need to say that. First, I think, frankly, as you heard, I don't see how this is, I don't see how you meet the mootness problem. That's just me. But further, there's no question under EPA, the appellate court, the circuit court, or I should say the Supreme Court, could appoint you. They could appoint anybody to somebody, to these cases. My question is, when? After the fact, after all the work is done, the battle is over, we're to decide then whether there should have been counsel? Our position is, we asked at the beginning. What did you ask? We asked the judge, and the judge said to the Attorney General, are you appointing? No, judge, the court, we're not appointing anybody. We have the exclusive power to do it. And the trial parties decided not to, thought he couldn't do it? Is that your position? He didn't feel he had the power. If you look at his decision, he says, I have no power to give you money. I have no power to appoint anybody, anything. That's the Attorney General, and we're challenging that. Because if that's true, I don't think the holding in EPA is as limited as the court believes. It does discuss, in that particular case, whether there was a conflict. It does stand for the proposition that the court has the power to do it. It actually says, initially, it is clear that the appellate court had the discretion to appoint or deny appointment of outside counsel. So did the trial court. But nobody appointed you. So did the trial court. And I'm saying that was an error. And I'm also saying to this court that somebody has to represent the interests of the court when the Attorney General takes the position, as they have here, both below and here, that the court does not need a lawyer, the court cannot have a lawyer appointed by the state, and further, and it's right in their brief, the court is not implicated. I'm reading their brief right here. Not implicated in this case because the court has no interest in where the funds were originally. They have no interest in the fact that we're currently using court fees as general revenue by keeping the interest, which is also improper under Crocker. And under other cases where they point out the fees are not from, do not themselves subject to bearing interest and having to be, when they're to be paid back. And they're wrong. And they're wrong under Crocker. But according to them, you don't get to that because I have no right to raise that for the court. I'm just an officious intermeddler. And this court and the court system doesn't get a lawyer. And we can strain all over the place to make sure, because the days of the Bar Association jumping in are gone, but they're an officious intermeddler. Why is that? I don't know, Judge, and I'm beginning to wonder why I spent years, and frankly, a lot of money, as did Mr. Curcio, on a principle of law, first of all, that's correct. Under Crocker, they had no right to this money. And if the court chooses to side with the state, they'll come back and do it again. And they'll keep doing it because no one's going to belly up to the bar. What's your strongest case for the proposition, should we agree with you, that you and Mr. Curcio should be paid, that it shouldn't be, that we have jurisdiction over that issue as opposed to the court of claims? Crocker v. Finley. Okay. And this is not a – court of claims is an arm of the legislature. It is not. Well, first of all, the issue isn't before you because they've chosen not to appeal it. They've acquiesced to the ruling of the trial court that Crocker v. Finley applies. They're not arguing that the trial court erred. They're not asking to reverse. They could have cross-appealed in theory, but they didn't. So I guess what we're talking about today is now let's decide that they can. Let's have an – maybe the state wants you to decide that the court never had the power to deal with this. They did, of course. It's not brief. I can argue off my brief. This isn't a claim – this isn't a tort claim against the state, which is what the court of claims deals with. Under the federal and state constitution, you can't file a claim against the state of Illinois. This is no different than any other declaration that a statute is unconstitutional. That is not resolved by the legislature. That's what the court of claims is. But somebody has to pay his fees, and that would be the legislature. No, because it's not a claim against respectfully. It's part of this case, and this is an action that took place in the judicial system, not as part of a claim against the state dealing with a tort. The court of claims would then be in a position of passing on what was done before the court system. Well, wouldn't we have to find that Cadillac and Williams are incorrectly decided to do that? No, because they deal with distinct issues. They're not our issue here. They don't deal with a declaratory judgment. They don't deal with work performed before the court on issues relating to the constitutionality of a law. Judge, if this court wants to, this court can find many reasons to deny the issue of fees. That also has a public policy impact, and I would urge you to publish it, because that will then make sure nobody else wastes their time defending the court system. Right now, I'm involved in a case where the county refuses to use funds given to it for court protection. The argument, I guess, could be made is, what am I doing representing the court there? Maybe I should. That would probably be asked all the time. If you have a client who has not retained you and you have not been appointed by the court, that, I would think, would always come up, Mr. Novoselsky. If you represent somebody who has not asked for representation and no judge has appointed you, I think that's a fair question. We asked it. Well, here we're challenging the fact that we were not appointed. We're asking to be appointed. The court can decline to do so. I don't question that. I would also suggest to this court that as a matter of public policy, encouraging the attorney general to treat this court as if it has no rights at all is something I would suggest is not the precedence the court should set. Why don't you take some time to finish, Mr. Novoselsky. I was going to answer your question. No, that's okay. I'll wait until later. Thank you. Mr. Burks. Thank you, Your Honor. Paul Burks on behalf of the defendants. There are a lot of statements that were made that are not supported by the record. And there are a lot of statements that are, in fact, inaccurate, in fact. And with respect to the attorney general's role and her role in this litigation and who she represents and how she does it, none of the accusations that were just made are, in fact, true. The attorney general has never refused to represent the court system. In fact, the AOIC is one of our clients, frequently a client of ours. The AOIC has been kept apprised of this litigation, has been given an attorney walled off from myself and the other attorneys representing the defendants, has read the briefs. And through that attorney, an attorney at the attorney general, I have been informed that they do not feel their interests are implicated in this appeal. And so they have not chosen to intervene. The same was true in the circuit court level. Well, especially on the appeal, that would be true because we got the money back. And we only got the money back because counsel stepped up and filed suit. There's no reason for us to believe for a moment, is there, Mr. Burks, that the legislative branch had not intended to sweep this money. They swept it and they took it. And they only gave it back to a person to a court order. That's correct. That is absolutely correct. The complaint that was filed by Ms. Morowitz saw, and I quote, that the plaintiff and the plaintiff class, that the defendants returned to the plaintiff and the plaintiff class all sums transferred into the general revenue fund since the inception of the segregated fund. So that's the complaint we received. It was a complaint for damages to be paid out of the general revenue fund by the treasurer and the comptroller. That's the claim that we defended. We said they're not entitled to that money. They have no standing to seek it. There was a number of defenses we raised. At the summary judgment hearing, the circuit court said, I think this money should not have been swept. I think it was a violation of separation of powers to sweep this money. So I'm going to give it back to the court system. I'm not going to give it to the plaintiffs. I'm not going to grant them any of the relief in their complaint, but I am going to do, you know, what I think the Constitution demands and move it back to the court system. And that's what the court did. And we did not appeal that ruling. Now, a lot of the plaintiffs sort of speculate as to why we didn't appeal that ruling. It's all unfounded. It's unfounded speculation as to why that ruling was not appealed. And the attorney-client privilege obviously prevents me from responding to that speculation. The decision to not appeal that was obviously made in conjunction with the client and a lawyer, and it was a tactical, strategic decision. There were a number of reasons that went into it, and that's all I can really say. But it is categorically not true that there was a conspiracy or an intent to preserve the right to sweep the funds again. That simply was not a factor in the decision not to appeal. That, those atmospheres. Would you agree that on its face, that under Crocker v. Finley, as counsel suggests, reading, we now conclude that court filing fees and taxes may be imposed only for purposes relating to the operation and maintenance of courts, that would seem to bar this money from going to the general revenue fund. Am I mistaken? That was not the basis of the circuit court's ruling. The circuit court actually ruled on different grounds. I mean, Crocker was an access-to-the-court-system case, and the circuit court ruled on separation of powers grounds. And we didn't appeal, so the result was the same? Well, I'd say Crocker was more of a, what's your deal with the money? Can they take the money on divorce cases and give it to domestic violence? Wasn't that the gist of it? That was it. Can you add $5 to a filing fee on divorce cases and then put it in a fund for domestic violence victims? And the court said no, because if you start adding these irrelevant charges to the cost of getting into court, you're going to interfere with people's right to get into court. You're going to pile up the fees. And so they really relied on Article 1, Section 12, which is the right to access justice freely. And they said, you know, if you're going to put a fee on getting into court, it's got to be related to the court system because then people can get in. And that issue, you know, that's what was decided in Crocker. The idea that Crocker would dictate that interest on those fees has to remain in the court system is a stretch from the rationale because what they said was if you add fees, people are going to be barred at the door. But, of course, if they paid their fees, they have no interest. They're not barred at the door anymore. They've accessed justice freely. And where the interest on those fees goes, whether it goes into general revenue or whether it stays in the court system, is not relevant to Article 1, Section 12, whether people can access justice freely. So Crocker really doesn't say anything about where interest on fees should go, which is the issue in the appeal. I mean, we have not, again, appealed the idea that the sweeps were unconstitutional. That ruling we've acquiesced in. Whether it's under Crocker or under separation of powers theory, the sweeps have been reversed and were unconstitutional. And the sweeps were reversed because plaintiff brought a case. Otherwise, the courts would have lost that money, right? That's true. And so why don't you go to the next level, then, of being able to recoup the fees? Well, let me say two things about that. One, the court would not have actually lost the money because of the way the statute worked, which was we'll sweep the fees out of the court system. But Part B of the statute said if the fund from which we've taken the money has an expense that's been authorized and appropriated for, we'll move money back to pay it. So there was always enough money in the funds to pay all of the authorized appropriated expenses. That just as a matter of what the statute and the record says. Claimants are not entitled to fees for a number of reasons. The first is the sovereign immunity question that Judge Quinn raised earlier, which is that a claim for fees has to go to the Court of Claims. And that's the case regardless of whether the substantive claim, the claim regarding the sweeps itself, was properly adjudicated in the circuit court. When you move on to getting money from the Treasury, you have to go to the Court of Claims to do that. And the case that we cite in our brief for that, which really goes through the legislative history and the language of the Court of Claims Act, is Catholic versus Illinois Department of Public Aid, which is from this court in 1987 and really says it quite clearly that claims for fees must go to the Court of Claims. Moving beyond that issue as to sort of even if you were in the right court, would you be entitled to fees? And the answer to that, too, is no. And the reason for that is the Supreme Court has said quite clearly that absent a statute or a contract for fee shifting, there is no legal basis for shifting fees onto an opponent in any litigation. It's called the American rule. And they've quite clearly said that just because something is done in the public interest, there's no reason to shift fees. That's not adequate. The legislature has to pass a statute or there has to be a contract. The only exceptions to this, and this is the exception that Plaintiff relied on below, is the third-party exception, which deals with real estate. He's abandoned that on appeal. So that's no longer in play. There's a common fund exception, which is, again, Plaintiff abandoned that, said, I don't want money from any alleged common fund. I'm not seeking the money from a common fund. So he's essentially conceded that there's no legal basis to award fees here. There's no contract. Let's talk about the common fund for a minute. In your brief, you indicated on page 26 of your brief that they disavowed the common fund. But in the plaintiff's brief, he spent five pages talking about the common fund, and he ends up on maybe page 21 or 22 saying that, indeed, an appropriate case for award for attorney's fees is under the common fund. I agree. His brief says that. But the common fund exception does not authorize the payment of fees by your opponent. What it does is allows you to collect your fees out of the recovery, whatever the recovery was. So it's like an unjust enrichment kind of recovery. So you're getting from whoever benefited, you're getting your fees from them. And he says repeatedly, and I list all the places in the record on page 8, we don't want our fees from the lawyer's assistance program fund or from the mandatory arbitration fund. We don't want to diminish the court funds. So if you disavow collecting your fees from the fund, then you're disavowing the common fund theory. That's how it works. And so if you don't get it from there, and the court themselves, after reading the briefs, indicated to their attorney in the attorney general's office that they believe that common fund theory has been disavowed, and so their interest in this litigation was not implicated because plaintiffs were not seeking money from a common fund. So I think if you look at page 8 of my brief, which is where I really cite the places in the record where he says we don't want the money from that fund, I think that the common fund theory has been abandoned. And what's been proffered instead is this new theory, this retroactive special assistant attorney general theory. But that one fails because a lawyer can't hire his client. Because a lawyer can't come into the court and say I did something for you, and now I want you to hire me as your lawyer because I've done it. There's just no rationale for that. And it's undisputed that the mandatory arbitration fund, the lawyer's assistance fund, the administrative office of the courts that administer those funds never sought representation by plaintiff's counsel. Does the record support the counsel's argument that they asked to be appointed by the circuit court? No. It does not. And it does not support the idea that we refuse to represent the court. In fact, there are citations in my brief to lower court briefs where we said to the court, you know, it's possible that this is going to implicate the court system here. Perhaps we should notify the AOSC. And at one point, an attorney from the attorney general's office, on behalf of the AOSC, attended court proceedings because there was a concern about the common fund theory that perhaps court funds were at risk. And when plaintiff's counsel at open court disavowed that theory at the time, the AOSC again withdrew their request for representation and said there's no need to file an appearance on our behalf. So there's always been, you know, a willingness to represent the court on behalf of the attorney general's office. And we have procedures for doing that when there's potential conflicts. And nobody's really challenged those procedures. They're quite extensive. And they've been in place for quite a while. And the court has never, none of our clients, including the AOSC, has ever complained about that, that I'm aware of. Can you address mootness? Sure. As to a permanent injunction, I will touch mootness. But I would like to point out that the circuit court never ruled on the request for a permanent injunction. There is no, the orders are at A10 through A13 in the appendix and A14 through 16. Those are the two final orders, one that deals with the substantive claims and one with attorney's fees. And there's no ruling on this supposed request for a permanent injunction. And without a ruling, I cited in my brief a couple of cases that are really squarely on point that say, if the circuit court doesn't rule on your request, then it's deemed abandoned. And you can't raise it, you cannot raise it on appeal. And it wasn't raised in the notice of appeal. So it appears that it was abandoned. The cases, that's cited at pages 15 and 16 of my brief. And they're pretty, they're block quotes, so it's pretty clear that the point that's being made there. And as to the forfeiture argument, that they abandoned this claim by not getting a ruling, I didn't see any response in the reply brief to that or an oral argument. So I think that it's pretty clear on the record that that claim just isn't before the court because it was abandoned. Now, as to whether or not, assuming the court wants to address the question, notwithstanding, we pointed out in our briefs that what he's really seeking is an injunction against future statutes. Nobody is claiming that my clients, the treasurer and the comptroller, on their own, without statutory authorization, just grab money from funds and move it around. Clearly they can't do that and they don't do that. What happens is the General Assembly authorizes by statute the transfer of this money from one fund to another. So a permanent injunction that he's talking about is an injunction that would prevent the legislature from passing a statute. But that is simply beyond the scope of what a permanent injunction is for. And a third point I'd like to make about the permanent injunction is that in order to get a permanent injunction, you have to prove your entitlement to it clearly. You have to have a hearing where you present evidence, where you show that a permanent injunction is necessary. There was no hearing, and probably because the court never ruled on the issue, there was never a hearing on the issue. And so I didn't mean to avoid your question, Your Honor. The answer is better than I asked it. And so the claim fails for a lot of substantive reasons. It was abandoned. It's beyond the scope of permanent relief. He didn't prove his entitlement to it sufficiently through a hearing at the trial court level. And it's moot. Because if it ever comes up again, the same proceeding would go forward in theory. I mean, if the same thing were to happen, the same type of proceeding could go forward. And the courts didn't lose any money, right? So there's a remedy at law. The money was transferred back into the accounts, and no money was lost. So there's clearly a remedy at law. So there's no need for kind of future prospective injunctive relief when you can always get retroactive relief at the time of the alleged wrong. So the claim that occurred is moot, and there's no reason for injunctive relief going forward. If I could touch on interest, just maybe for a moment before I sit down. Again, I'd like to point out about the interest argument. And the reason I would like to not lose my chance to do that is because I believe there was really a new argument raised in the reply brief. Because at the trial court level, what we were really discussing or arguing about more is whether the money, when the money was swept and it was not in the arbitration and lawyer funds for that period of nine months to a year, was it earning interest? And then when it's returned to those funds, should that interest be returned? So you're talking about $970,000 moved into the general revenue, then moved by court order to a protest fund, and then subsequently moved back into the arbitration and lawyer funds. So during that period of time, that $970,000, was that interest, should that interest have been returned? And the arguments that were being made in the circuit court were we cited a statute, Section 4.1 of the Finance Act, that said, no, those aren't interest-bearing accounts. They cited another statute. A witness came in and said, no, this is the statute we believe applies. That was the argument. It was a statutory, which of these statutes applies during this period of the sweep? And that's what I understood the argument to be in the opening brief as well. In the reply brief, what I understood the argument that was being made was that the statute that we claim applies, Section 4.1, which says interest on these funds goes into the general revenue, was unconstitutional under Crocker v. Finley. That's what I understood him to be arguing in the reply brief. And since that wasn't really raised, wasn't fully litigated sort of in the trial court, and it wasn't really raised in the opening brief, I did want a chance to at least address that argument before I sat down. And I believe that that argument fails because Crocker v. Finley was not about separation of powers, which is what the trial court ruled on in this case, saying that the legislature has to keep their hands off of judicial funds because the judiciary is a separate branch and you can't touch it. It was about access to the courts. So the question, if something violates Crocker, is are you putting a burden on somebody who wants to get into the court system that's unrelated to their desire to get into the court system, that's unrelated to the operation of the courts? And so when you deal with fees, you say, well, what's that fee for? Oh, it's for something unrelated to the court system? That's a burden on that litigant, so we're going to disallow that. But when you deal with interest, you're not dealing with any burdens on the court system. So to the extent that his reliance on Crocker for the proposition that Section 4.1 can't be enforced, it's a stretch. And since we have the presumption of constitutionality of our statutes and the court should avoid finding a statute unconstitutional and it's the plainest burden to show that it's unconstitutional, I think having no legal support for the proposition or relying solely on Crocker, which really doesn't address that proposition, he hasn't satisfied that burden. So 4.1, which dictates where interest goes, is a constitutional statute, or he hasn't proved it unconstitutional. Therefore, it should apply, and therefore, interest should not be transferred back into the court funds. Thank you very much. Mr. Novoselsky, briefly. Well, I apologize because I may not be, because of what I just heard, as brief as I was planning on. You just heard a complete fabrication. There is nothing in this record that anyone on behalf of the AOIC, or now I hear a special attorney, somebody in their office, presumably other than Mr. Burks, was actually working with AOIC. There is nothing in the record that that individual appeared. There is nothing being argued anywhere, including in the record before this court, that the AOIC has reviewed the matter. You were just told affirmatively that the AOIC has decided that they have no interest in the fee issue. Where is that in the record? Have they intervened? No. We're told there's somebody at the Attorney General's office who's consulting with them. That's not in the record. And by the way, the AOIC is not the court. You won't be ruling on this case based on anything that's not in the record, Mr. Novoselsky. I wanted to emphasize that, and I'd also point out that the AOIC, Your Honor, was correct. It's the seven individuals who were elected to the Supreme Court that are the court. They supervise under the Constitution. The AOIC is merely an administrative arm. I don't know, even if it's true, if the AOIC consulted the seven members of the court to get direction. I wouldn't ask. I didn't raise it, and I'm offended by it, because it's an attempt to muddy the waters and suggest to this court that the Supreme Court doesn't want the money, and the Supreme Court really doesn't want anyone stepping up on their behalf. What's interesting, though, is if the Attorney General was willing to have a lawyer for the AOIC in the courtroom, why didn't they ask the Supreme Court if they wanted a lawyer to represent them when the funds were taken, when we suggested it? Again, Mr. Novoselsky, we won't be ruling on anything that's not in the record, and I don't try to read the tea leaves with the Supreme Court. I'm not the one who raised it. I'm not the one who came in here and affirmatively fabricated it. You've seen it after I told you. Don't worry about it. Move on. Now, as far as the nonsense about the money was really at risk, look at the decision of this court in Chicago Bar v. Cronson, which I cited at page 10 of my reply brief. The theory that the Swedes were really okay because the money would have been put back at a later date. LAP is collected through ARDC, and Cronson, this court said, that money is not subject to any control of anyone but the Illinois Supreme Court. It can't be audited. It can't be touched. What they did here is they took the money belonging to the Supreme Court, and by the way, if you look in the appendix, counsel keeps reading the original complaint. We amended it. Page A11, the court granted judgment in our favor on the count of the complaint asking for the return of the fees. It wasn't just the court on its own decided to do it. I keep hearing that. It's page 11 of the appendix. The court also in section D dealt with the issue of sovereign immunity, and the other arguments are now making that we should be in the court of claims. They didn't appeal that. And now they're standing here with every excuse in the world telling you, the funds were never really at risk. We would have given them back. They didn't. I didn't hear them. Maybe I was daydreaming, which I do up here a lot, but okay. We won't rely on that either. Based on that, we will not accept. I can assure you, Mr. Novoseltsev, that nobody would accept a representation on behalf of the state of Illinois that they won't intend to sweep every nickel they can. No, they're going to do that. Actually, what I was saying is their position was that they really didn't endanger court funds because Justice Coleman correctly asked, well, until somebody filed this lawsuit, the response was, you can go back and listen to the tape. Well, actually, those funds would have gone back anyhow because it says under the Act that once we take it, if we decide that they need the money, the court needs the money, we'll give the money back to them. But, of course, that money is out of the court's control. It's now under the control of a branch that isn't supposed to have it. And, by the way, when you read the trial court's decision, he cites Crocker extensively. So what we have here is a fantasy world. Candidly, we have a fantasy world that if lawyers, you know, officious intermedialers such as myself and Mr. Curcio, are told don't intervene for the court, somebody else will do it. Now, that's what your honor was the state's attorney for many years. You're familiar with what was called the SOTI defense. Some other dude did it. Well, some other dude is not going to jump up and do it here because nobody did until we did it. Are we entitled to be paid under the common fund? We didn't abandon that. We said the state, since the state took the money, there was a common fund and the state can pay the fees. That's an argument we didn't abandon, Justice Steele. You're correct. It's in our brief. They read it as saying because we don't think it should be taken from the court, but that's an abandonment. Those fees, just like in Jorgensen, part of the attorney's fees were paid by the state, not by the court. Unfortunately, the court was asked to pay part of it, individual judges, not the court itself. So Jorgensen has the precedent for allowing those fees under the common fund to be paid by the state. It wasn't abandoned. The court has the power, Justice Quinn is correct, you have the power. I apologize. You have the power to appoint us. And as the Jorgensen case points out, the court needs to be protected. And, Judge, if nobody protects the court here, no one's going to jump up the next time. There won't be another dude coming in, spending lots of money out of their pocket for expenses, fighting. Take a look at the record. This isn't a magnanimous attorney general and two other branches saying, it's your money, take it back. They fought us everywhere. Well, they're in front of you here. They are. And very candidly, I apologize to the court for my fervor. I've been doing this 37 years. I've finally reached the point where I can look back and say, never in 37 years. It's an important issue. It is. And I agree with the former Justice Rarick that the court system needs protection. And we all know, we read the newspapers, they're going to get the funds from someplace. I suggest they're going to get it out of the court's pocket. Thank you very much for the oral testimony.